# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. FREDERICK, | No. 4:18-CV-02204 |
| Plaintiff, | (Judge Brann) |
| v. | |
| BETH HERB, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### APRIL 8, 2020

Plaintiff Michael J. Frederick, a state prisoner presently confined at the State Correctional Facility at Camp Hill in Camp Hill, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment medical claim.[1] Presently before the Court is Defendants Patricia Biting, Laurel Harry, and Beth Herb's motion for summary judgment, which is ripe for adjudication.[2] For the reasons that follow, the Court will grant the motion and will also *sua sponte* grant summary judgment in favor of *pro se* Defendant Julian Gutieroz, who did not join in the motion.

---

[1] Doc. 1.
[2] Doc. 26. Plaintiff has filed no opposition to the motion or the statement of facts.

## I. FACTUAL BACKGROUND

Plaintiff is a *pro se* state prisoner who has been incarcerated at SCI Camp Hill at all times relevant to the complaint.[3] At SCI Camp Hill, Defendant Patricia Biting was "the Registered Nurse Supervisor," Defendant Laurel Harry was the warden, and Defendant Beth Herb was a Correction Health Care Administrator and who was also the "clinical director."[4] Plaintiff alleges in the complaint that Defendant Julian Gutieroz was the "medical director."[5]

On November 24, 2016, Plaintiff got into a fight with another inmate and sustained an injury to his elbow during the altercation.[6] Corrections officers responded by handcuffing Plaintiff and the other inmate, and escorted them to the medical department at SCI Camp Hill.[7] Plaintiff's only complaint to medical staff at the time was that he was experiencing pain in his right elbow, and he was unable to move it.[8] The medical staff determined that Plaintiff was able to move his elbow, albeit only slightly because Plaintiff remained in handcuffs.[9] Plaintiff was issued a misconduct for the altercation and pled guilty to the violation.[10] As a result, Plaintiff was ordered to be housed in the restricted housing unit ("RHU") at SCI Camp Hill

---

[3] Doc. 27 at 1.
[4] *Id.*
[5] Doc. 1 at 1.
[6] Doc. 27. at 2.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

2

for thirty days.[11]  Plaintiff was released from the RHU and returned to "A-Block" in the general prison population on December 24, 2016.[12]

Plaintiff was visited each day by a nurse when he was in the RHU and was given Motrin to alleviate his discomfort; nevertheless, Plaintiff's pain in his elbow got "progressively worse."[13]  Plaintiff states that when he was visited by a nurse on November 29, 2016, he "stuck [his] arm out the hole" in the door and "said, listen, there's something wrong with this."[14]  Plaintiff was then given an x-ray on November 30, which revealed that Plaintiff had "a fracture to the radial head of the elbow."[15]

Plaintiff was transported from SCI-Camp Hill to the emergency room at Holy Spirit Hospital on December 1, 2016.[16]  The medical notes from Plaintiff's visit to the hospital reflect that Plaintiff stated to a registered nurse: "I'm ok.  I've got some pain in my elbow and shoulder though."  Plaintiff also met with Dr. Damian Rispoli, who "discussed both operative and nonoperative treatment" for Plaintiff's elbow injury.[17]  The doctor "recommend[ed] consideration for surgical treatment" and Plaintiff was "comfortable with proceeding with surgical treatment."[18]  Plaintiff

---

[11] *Id.*
[12] *Id.*
[13] *Id.* at 3.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

returned to Holy Spirit Hospital on December 5, 2016 for surgery, which proceeded without complication[19].

Plaintiff was again taken to the hospital on December 14, 2016, for a follow-up visit, at which time Dr. Rispoli observed that Plaintiff was "doing well" and that his pain was "well controlled."[20] Plaintiff returned to Holy Spirit Hospital for a second follow-up visit on December 28, 2016.[21] Dr. Rispoli again observed that Plaintiff "is well" and noted that Plaintiff's surgical wound was "well healed" and the "range of motion" in Plaintiff's elbow was "coming along nicely."[22] In addition, Plaintiff was given an elbow brace to further his recovery.[23] Plaintiff had a third follow-up visit with Dr. Rispoli on January 12, 2017, where Plaintiff was again assessed as "doing well" and his elbow brace was removed.[24] Plaintiff had two additional follow-up visits with Dr. Rispoli at Holy Spirit Hospital on February 23 and May 25, 2017.[25] Dr. Rispoli observed at both visits that Plaintiff "continues to do well with" his "range of motion and pain" in his elbow.[26] At the May 25, 2017, visit Plaintiff was told to "follow up" in the future only "as needed."[27]

---

[19] *Id.* at 4.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 5.

Plaintiff filed grievance 754841 in connection with the events at issue in the complaint on August 26, 2018.[28] The grievance was denied on August 28, 2018, because it "was not submitted within fifteen (15) working days after the events upon which claims are based."[29] On September 20, 2018, Plaintiff appealed the denial of his grievance to the Facility Manager at SCI-Camp Hill.[30] On September 27, 2018, Plaintiff's appeal was denied.[31] Plaintiff did not appeal the decision of the Facility Manager.[32]

## II. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[33] A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[34] A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[35] The Court should view the facts in the light most favorable to the non-

---

[28] *Id.* at 6.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] Fed. R. Civ. P. 56(c).
[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[35] *Id.* at 250.

moving party and make all reasonable inferences in that party's favor.[36] When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[37]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[38] Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[39] "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[40] "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[41]

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'"[42] Rule 56 mandates the entry of summary judgment against the party who

---

[36] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[37] *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[38] *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).
[39] *Anderson*, 477 U.S. at 257.
[40] *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).
[41] Fed. R. Civ. P. 56(e)(2)-(3).
[42] *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[43]

Here, Plaintiff has failed to oppose the motion or the facts asserted in Defendants' statement of facts. Pursuant to Federal Rule of Civil Procedure 56(e),[44] the Court has reviewed the statement of facts as well as each fact's citation to the record and will consider each fact undisputed.[45] A thorough and comprehensive review of the record makes clear that no material fact is in dispute as to the dispositive issue in this case. As such, summary judgment is appropriate.[46]

## III. DISCUSSION

The Moving Defendants argue, *inter alia*, that Plaintiff has failed to exhaust his administrative remedies, which then bars his Eighth Amendment medical claim brought pursuant to § 1983 as a matter of law. A review of the record demonstrates that although Plaintiff initiated the grievance process with grievance 754841, he failed to exhaust the process through all required levels of appeal.

Section 1997e(a) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[43] *Celotex Corp.*, 477 U.S. at 322.
[44] *See* Fed. R. Civ. P. 56(e)(1).
[45] *See* Fed. R. Civ. P. 56(e)(2).
[46] *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it.").

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions,[47] and a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'"[48] "[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[49] A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action.[50]

The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'"[51] The burden of proving non-exhaustion lies with the defendants asserting the defense.[52] A court evaluating the "threshold" issue of

---

[47] 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001))
[48] *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013).
[49] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[50] *Booth*, 532 U.S. at 741.
[51] *Jones v. Bock*, 549 U.S. 199, 218 (2007). *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010) ("[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures.").
[52] *Jones*, 549 U.S. at 212, 216–17.

8

exhaustion looks at whether the inmate "compli[ed] with the prison's specific grievance procedures" and whether those procedures were available to the inmate.[53]

In Pennsylvania, the Department of Corrections ("DOC") has established a comprehensive administrative grievance procedure, DC-ADM 804.[54] Under that procedure, a prisoner must first submit a timely written grievance for review by the facility manager or regional grievance coordinator within fifteen days from the date of the incident.[55] DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law."[56] A response should be received within ten business days.[57] Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days.[58] Again, a response should be received within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate should receive a final

---

[53] *Rinaldi v United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Drippe*, 604 F.3d at 781, and *Small*, 728 F.3d at 269-71).
[54] *See* ECF No. 27-5 (DC-ADM 804).
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*

9

determination in writing within thirty days.[59] To fully exhaust an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process."[60]

In Defendants' statement of facts, which is undisputed for the purpose of this motion, it is clear that Plaintiff did not exhaust his grievance regarding the medical care he received. Specifically, even assuming that Plaintiff's grievance was timely, Plaintiff still failed to appeal the denial of it through the full administrative remedy process to SOIGA. Because Plaintiff did not fully complete his grievance through "all three levels of review" and he also did not "comply with all procedural requirements of the grievance review process,"[61] he has failed to exhaust his grievance.

That does not end the Court's inquiry, however, as I must also consider whether the applicable administrative remedies were "available" to Plaintiff for those unexhausted claims. In *Ross v. Blake*,[62] the Supreme Court most recently outlined the three instances in which remedies would not be "available" such that

---

[59] *Id. See also Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001) (discussing the exhaustion process for Pennsylvania state prisoners under an older version of DC-ADM 804).
[60] *Stroman v. Wetzel*, No. 1:16-CV-2543, 2019 WL 931653, at *3 (M.D. Pa. Feb. 26, 2019). *See also Garcia v. Kimmell*, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) ("Proper exhaustion in Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final review.").
[61] *Id.*
[62] 136 S. Ct. 1850 (2016).

exhaustion may be excused: (1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[63]

Here, as Plaintiff has failed to oppose the underlying motion at all, he makes no argument that he falls under one of these three categories, nor would they appear to apply to the undisputed facts presented in the motion. Indeed, Plaintiff did utilize the grievance process, he simply failed to finish the last step. There is simply no fact or reasonable inference the Court can make that would support a conclusion that the grievance procedure was somehow unavailable to Plaintiff at SCI Camp Hill.

"[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."[64] Plaintiff, by failing to oppose the motion, has now failed to establish that such remedies were unavailable to him. Accordingly, this Court finds that as a matter of law, Plaintiff failed to exhaust the administrative remedies that were available to him, as he is required to do by § 1997e(a) prior to filing suit

---

[63] *Id.* at 1859-60. *See also Rinaldi*, 904 F.3d at 266-67.
[64] *Rinaldi*, 904 F.3d at 268.

as to all issues raised in the complaint, and will grant the Moving Defendants' motion for summary judgment.

*Pro Se* Defendant Julian Gutieroz is not represented by the same attorney as the Moving Defendants and has not joined in the motion for summary judgment. In the interests of justice,[65] the Court will *sua sponte* consider whether it should grant summary judgment in his favor due to Plaintiff's failure to exhaust his administrative remedies.

The ability of a district court to *sua sponte* consider and grant summary judgment is well within the discretion of the court and in conformance with circuit and Supreme Court precedent.[66] In order for such a grant to be appropriate, it must be "a decision based on a purely legal issue" made after the record has been fully developed and only when there is no prejudice to the non-moving party.[67] After

---

[65] *See* Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

[66] *See Celetex*, 477 U.S. 317, 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223-24 (3d Cir. 2004) (upholding district court's grant of *sua sponte* summary judgment and concluding that such an action is appropriate and in conformance with circuit precedent when the record is fully developed, prejudice is lacking, and the issue is purely legal). *See also Chambers Dev. Co. v. Passaic County Utilities Auth.*, 62 F.3d 582, 584 n.4 (3d Cir. 1995) ("[A]uthority has developed to allow a court to grant summary judgment to a non-moving party.").

[67] *Gibson*, 355 F.3d at 224 (finding *sua sponte* summary judgment appropriate when all three circumstances exist and reserving judgment as to whether it would be appropriate with fewer than all three).

considering these factors, the Court finds that it is proper, as a matter of law, to *sua sponte* enter summary judgment in favor of *pro se* Defendant Gutieroz.

First, the Court notes the presence of a fully developed record. The time for discovery has expired, and Plaintiff has not filed any discovery motions that would indicate further discovery is needed. Plaintiff has also not opposed the motion or refuted any statement of fact. Thus, Plaintiff has had "the opportunity to present all the evidence that would be used to oppose" the motion, even if Plaintiff has chosen not to avail himself of that opportunity.[68]

Next, the dispositive issue presents a question of law, and it is an issue of which Plaintiff has been put on notice by the Moving Defendants' motion. As the United States Court of Appeals for the Third Circuit explained in *Gibson v. Mayor and Council of City of Wilmington*, "notice" means that a party "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward.'"[69] The evidence or argument needed to refute the motion for summary judgment—that Plaintiff either exhausted grievance 754841 or that the grievance process was unavailable to him—is the issue and is not defendant specific. Put another way, the relevant legal inquiry to the Court is whether Plaintiff exhausted the issue of his medical care. Here, as in *Gibson*, Plaintiff was on notice by the

---

[68] *Gibson*, 355 F.3d at 224.
[69] *Gibson*, 355 F.3d at 223-24 (3d Cir. 2004) (quoting *Leyva v. On the Beach, Inc.*, 171 F.3d 717, 720 (1st Cir. 1999)).

Moving Defendants' motion that the exhaustion of his administrative remedies was an issue on which the Court may grant summary judgment, and it would not matter to his defense to the motion whether Defendant Gutieroz had joined in it.

Finally, the Court can discern no prejudice to Plaintiff if it were to enter judgment in Defendant Gutieroz's favor. Plaintiff was on notice that the dispositive issue before the Court was the exhaustion of administrative remedies, and he has had a full and fair opportunity to be heard on the merits of that issue and to present any evidence relevant to it.

As all three *Gibson* factors exist here, the Court will *sua sponte* enter summary judgment in Defendant Gutieroz's favor because Plaintiff has failed to exhaust his administrative remedies regarding his Eighth Amendment medical claim asserted against this Defendant.

## IV. CONCLUSION

Based on the foregoing, the Motion for Summary Judgment will be granted, and summary judgment will also be *sua sponte* granted in Defendant Gutieroz's favor. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge